HIGHLAND FARMS CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 95690. Promugated November 27, 1940.

*John W. Martin, Esq.*, and *G. Kibby Munson, Esq.*, for the petitioner.

*James H. Yeatman, Esq.*, for the respondent.

OPINION.

KERN: 1. The Commissioner added to income $87,844.63 "gain from cancellation and redemption of mortgage bonds", computed by deducting from the $200,000 face value of the bonds issued by petitioner the aggregate of (1) $6,000 discount on issuance, (2) $51,-900 representing bonds retired at par by Fidelity with money supplied by petitioner, less $1,557 discount applicable to such retired bonds, (3) $3,907.56 representing funds collected by Fidelity on notes and contracts pledged by petitioner under the mortgage and used to redeem the bonds, and (4) $51,904.81 of the damage award used to redeem the bonds.

The evidence discloses that, although the court decree of November 23, 1933, adjudged the obligation evidenced by the bonds usurious, the court recognized petitioner's obligation to pay the full $200,000 face value of the bonds to the extent of applying as credits against the obligation the amounts which are deducted from the face value of the bonds in the deficiency notice and, in addition thereto, $20,-410.83 as a return of interest paid more than two years prior to the bringing of the suit, $25,806.80 as double the amount of interest paid within two years before the suit was brought, and $40,000 as the value of Highland Farms stock which Fidelity received when the loan was made.

The Commissioner's determination is difficult to explain in that he properly credits the $51,904.81 portion of the damage award as a payment against the $200,000 face value of the bonds, but omits the amounts credited for interest and for the Highland Farms stock, although all of the items were applied in satisfaction of the bonds by the same decree. Since the total of amounts paid and applied by the court in satisfaction of Fidelity's claim under the bonds equals their face value of $200,000 (apart from a mathematical error of $70 in the decree's computation), we can perceive no justification for the determination that gain resulted from the cancellation and retirement of the bonds. For purposes of decision we confine ourselves to the issues presented and argued by the parties.

Petitioner meets the issue of whether gain was derived from cancellation and redemption of its bonds by contending that it realized no taxable gain because there was a shrinkage in the value of its assets from $623,000 to less than $25,000 and the transaction as a whole was a loss. In this it relies on *Bowers* v. *Kerbaugh-Empire Co.*, 271 U. S. 170. In that case the taxpayer's subsidiary lost in its business money which the taxpayer had borrowed and was bound to repay in a foreign currency. The taxpayer repaid the loan in

the foreign currency, which had depreciated between the time of the loan and repayment, and no taxable gain was held to result, since the transaction as a whole was a loss. That case, however, has been considerably limited in scope by *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, wherein the recovery in 1920 by a judgment of compensation for work done at a loss in earlier years was held to constitute taxable income for 1920, although the whole transaction resulted in a loss. Cf. *United States* v. *Kirby Lumber Co.*, 284 U. S. 1.

But petitioner, as distinguished from the taxpayer in the *Sanford & Brooks Co.* case, was insolvent during the taxable year and it has been held that an insolvent taxpayer which discharges its obligations by payment of less than the amount owed realizes no taxable gain where it is still insolvent after the transaction. *Sickles Co.* v. *United States*, 31 Fed. Supp. 654; *Dallas Transfer & Terminal Warehouse Co.* v. *Commissioner*, 70 Fed. (2d) 95; *Transylvania R. Co.* v. *Commissioner*, 99 Fed. (2d) 69; *Madison Railways Co.*, 36 B. T. A. 1106; *Springfield Industrial Building Co.*, 38 B. T. A. 1445; *Burnet* v. *Campbell Co.*, 50 Fed. (2d) 487; *Commissioner* v. *Simmons Gin Co.*, 43 Fed. (2d) 327. Cf. *E. B. Higley & Co.*, 25 B. T. A. 127; *Towers & Sullivan Manufacturing Co.*, 25 B. T. A. 922; *Porte F. Quinn*, 31 B. T. A. 142; *Lakeland Grocery Co.*, 36 B. T. A. 289.

The facts show that in 1935 petitioner's assets, aside from the $46,180 check received under the state court decree, were worth less than $25,000. Petitioner paid $36,000 of the $46,180 to its attorneys in 1935 and used the balance to defray expenses of the suit. Petitioner still owed its attorneys $35,000 under its contract with them and, since its assets did not equal its liabilities, it was insolvent. From the cancellation of its bonds, therefore, it appears that petitioner derived no taxable gain.

A further question arises, however, from the fact that petitioner on its income tax returns for earlier years has been allowed deductions aggregating $33,314.23 for interest paid to Fidelity. In numerous cases it has been held that a taxpayer must include in taxable income amounts recovered in the taxable year where deductions in respect of such amounts have been taken in prior years. *Houbigant, Inc.*, 31 B. T. A. 954; affirmed *per curiam*, 80 Fed. (2d) 1012; certiorari denied, 298 U. S. 669; *Nash* v. *Commissioner*, 88 Fed. (2d) 477; *Union Trust Co. of Indianapolis* v. *Commissioner*, 111 Fed. (2d) 60; *Chicago, Rock Island & Pacific Ry Co.* v. *Commissioner*, 47 Fed. (2d) 990; *Victoria Paper Mills Co.*, 32 B. T. A. 666; affd., 83 Fed. (2d) 1022; *Helvering* v. *Jane Holding Corporation*, 109 Fed. (2d) 933; *Commissioner* v. *Liberty Bank & Trust Co.*, 59 Fed. (2d) 320; *Chevy Chase Land Co.*, 34 B. T. A. 150; *Dixie Margarine Co.*,

38 B. T. A. 471; on appeal, C. C. A., 6th Cir.; *Elsie S. Eckstein*, 41 B. T. A. 746; *Walter M. Marston*, 41 B. T. A. 847; *Jamaica Water Supply Co.*, 42 B. T. A. 359.

Despite the fact that petitioner has been allowed deductions in earlier years for the interest paid to Fidelity, the income to petitioner, if any, was received solely in the form of a cancellation of indebtedness, and this fact adequately distinguishes the instant proceeding from the cases above cited. The arguments which have prompted holdings that the taxpayer realizes no taxable gain from the cancellation of indebtedness where he is insolvent after the transaction is over are equally applicable here, even though the cancellation resulted from the application to the indebtedness of interest payments made in prior years. Petitioner, being insolvent, was unable to realize income from the cancellation of its bonds however accomplished, since when the transaction was all over it still did not have sufficient assets to meet its liabilities and there were not "made available" any "assets previously offset by the obligation of bonds now extinct." See *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, 3. The addition to income of $87,844.63 "gain from cancellation and redemption of mortgage bonds" was error.

2. The Commissioner also added to income $98,188.09 "income from collection of damage awards", computed by adding $42,050.95 damages received in cash, $4,232.33 interest on the award, and $57,949.05 damages applied against the retirement of bonds and trustee's expense, and deducting from the total of $104,232.33 trustee's expense of $1,044.24 for taxes and $5,000 trustee's fee.

The petitioner's cross-action in the state court for actual damages alleged that there was a plan to injure petitioner and to wreck the enterprise. The facts disclose no separate claim for loss of profits, although such a loss is mentioned in the complaint and the damages awarded by the court do not appear, in view of the facts presented in the case and the verdict of the jury on the special issues submitted to it, to have been intended as a restoration of lost profits but rather of lost capital caused by the course of injurious conduct pursued by the president of Fidelity against petitioner. *United States* v. *Safety Car Heating & Lighting Co.*, 297 U. S. 88, and other cases cited by respondent involving recovery of lost profits are, therefore, distinguishable.

The situation in the instant case is akin to that found in *Farmers' & Merchants' Bank of Catlettsburg* v. *Commissioner*, 59 Fed. (2d) 912, wherein an amount received by a bank in settlement of an action for injury inflicted on its business by a Federal Reserve bank which had employed agents to cash checks at the taxpayer bank in such manner as to attract unfavorable public comment and interfere with

the taxpayer's business was held not to constitute taxable gain. The Circuit Court in that case observed:

The fund involved must be considered in the light of the claim from which it was realized and which is reflected in the petition filed in its action against the Reserve Bank. We find nothing therein to indicate, with the certainty required in the statement of a cause of action, that petitioner sought reparation for profits which petitioner's [Reserve Bank] misconduct prevented it from earning in 1925. * * *

We think that the gravamen of petitioner's action against the Reserve Bank was the injury inflicted to its banking business generally, and that the true measure of damages was compensation to be determined by ascertaining how much less valuable its business was by reason of the wrongful acts of the Reserve Bank. * * *

The facts show that the value of the property pledged by petitioner to secure the bonds at the time of issuance was $623,000 and that petitioner's total assets in 1935 were less than $25,000, a loss of almost $600,000. Deducting therefrom the $138,000 loss due to the storm of April 13, 1929, which destroyed petitioner's strawberry crop, the $100,000 damages received under the state court's decree restored only one-sixth of petitioner's loss of capital between 1929 and 1935. Lost profits could have been at most but an incidental ground for the award. We must conclude that the damages in the instant case were a compensatory payment constituting return of capital investment. *Farmers' & Merchants' Bank of Catlettsburg* v. *Commissioner, supra; Hyatt Roller Bearing Co.* v. *United States*, 43 Fed. (2d) 1008; *Bankers Pocahontas Coal Co.* v. *United States*, 55 Fed. (2d) 626; affd., 287 U. S. 308; *Henri Chouteau*, 22 B. T. A. 850; *Edward H. Clark*, 40 B. T. A. 333; *John H. Schofield*, 19 B. T. A. 234; *Edward E. Marshall*, 10 B. T. A. 1140. Cf. *C. A. Hawkins*, 6 B. T. A. 1023; *Mrs. Lyde McDonald*, 9 B. T. A. 1340. The respondent was in error, therefore, in including the $90,000 actual damages in petitioner's taxable income.

The punitive damages of $10,000 present a different problem. They were awarded neither for loss of capital nor for loss of profits, but as a penalty. In *Central R. Co. of New Jersey* v. *Commissioner*, 79 Fed. (2d) 697, an amount received by a taxpayer in settlement of a suit against a fiduciary for an accounting of profits earned by a corporation organized and controlled by the fiduciary for business operations adverse to the taxpayer's interest was held to be a penalty imposed by law upon a faithless fiduciary and not taxable income. A penalty imposed by law does not meet the test of taxable income set forth in *Eisner* v. *Macomber*, 252 U. S. 189, as "'the gain derived from capital, from labor, or from both combined,' provided it be understood to include profit gained through a sale or conversion of capital assets." The respondent erred in adding the $10,000 punitive damages to petitioner's taxable income.

3. A claim for an additional deduction of $35,435.06 for attorneys' fees was first presented in the petition. Respondent contends that in 1935 the balance due petitioner's attorneys had not become fixed or determined and that petitioner's president took the position that the attorneys were not entitled to receive anything more than the $36,000 they had already been paid.

Petitioner was on an accrual basis of accounting in 1935 and its liability under the contract of April 21, 1933, with its attorneys was fixed and definite in 1935. The $71,000 fee claimed by the attorneys had been earned in 1935, when the judgment of the trial court became final. In that year all the events had occurred which fixed the fee and determined the liability of petitioner to pay it. The fact that payment did not take place until 1938, when the attorneys brought suit for $40,000 and a settlement was reached, does not alter the fact that the fee which had been contingent upon the outcome of the litigation constituted an accrued expense in 1935 and was deductible in that year. *United States* v. *Anderson*, 269 U. S. 422; *American National Co.* v. *United States*, 274 U. S. 99; *Bonnie Bros., Inc.*, 15 B. T. A. 1231. On this issue also the respondent's determination was in error.

Because of an additional deduction granted for legal fees,

*Decision will be entered under Rule 50.*