GEHRING PUBLISHING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AHRENS PUBLISHING COMPANY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

RESTAURANT PUBLICATIONS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 107046, 107047, 107048.  Promulgated December 22, 1942.

*D. B. Chase, Esq.*, for the petitioners.
*Ellyne E. Strickland, Esq.*, for the respondent.

OPINION.

BLACK, *Judge:* These proceedings involve two questions. The first question is common to all the petitioners for both of the taxable years 1936 and 1937, and is whether, in computing the surtax on undistributed profits under section 14 of the Revenue Act of 1936 as amended by section 501 of the Revenue Act of 1942, petitioners are entitled to credits such as are provided in section 26 (c) of the same act, as also amended by the said section 501, relating to restrictions on payment of dividends. The second question involves only petitioner Ahrens Publishing Co. for the taxable year 1937, and it is whether the respondent erred in increasing the income of that petitioner for the year 1937 by $6,200, which is the amount by which its liability under a purchase agreement was adjusted downward in that year.

Section 26 (c) (1) and (2) of the Revenue Act of 1936, as amended, is set forth in the margin.[1] Under the first question petitioners contend primarily that each petitioner is entitled to a credit under section 26 (c) (1) of 100 percent of its respective adjusted net income for the taxable years 1936 and 1937, on the ground that the creditors' agreement of April 1, 1933, plus the agreement of May 12, 1933, between

---

[1] SEC. 26. CREDITS OF CORPORATIONS.

In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax—

\*          \*          \*          \*          \*          \*          \*

(c) RESTRICTIONS ON PAYMENT OF DIVIDENDS.—

(1) PROHIBITION ON PAYMENT OF DIVIDENDS.—An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.

(2) DISPOSITION OF PROFITS OF TAXABLE YEAR.—An amount equal to the portion of the earnings and profits of the taxable year which is required (by a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the disposition of earnings and profits of the taxable year) to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt; to the extent that such amount has been so paid or set aside. For the purposes of this paragraph, a requirement to pay or set aside an amount equal to a percentage of earnings and profits shall be considered a requirement to pay or set aside such percentage of earnings and profits. As used in this paragraph, the word "debt" does not include a debt incurred after April 30, 1936.

the three voting trustees not to declare or cause to be declared or permit to be declared any dividend upon any of the outstanding stock of the parent company or any of its subsidiaries, except with the unanimous consent of all three of the voting trustees, should be considered together as representing one single contract executed by each petitioner prior to May 1, 1936. If the two instruments of April 1, 1933, and May 12, 1933, can not be construed as together representing a single contract, then, as a first alternative, petitioners contend that on the basis of the creditors' agreement of April 1, 1933, the parent company (Ahrens Publishing Co.) is entitled to a credit under section 26 (c) (2) for the taxable years 1936 and 1937 equal to 60 percent of the consolidated net earnings and profits of the petitioners for those years, or if not 60 percent of the consolidated net earnings and profits, then, as a second alternative, petitioners contend that on the basis of the creditors' agreement of April 1, 1933, each petitioner is entitled to a credit under section 26 (c) (2) for the taxable years 1936 and 1937 equal to 60 percent of each petitioner's own net earnings and profits for those years. The respondent contends that petitioners are not entitled to any credits under either section 26 (c) (1) or section 26 (c) (2).

We think petitioners' primary contention that each petitioner is entitled to a credit under section 26 (c) (1) of 100 percent of its respective adjusted net income is without merit. The Ahrens Publishing Co. is the only petitioner that executed any written contract prior to May 1, 1936. That was the contract of April 1, 1933, between that petitioner, as first party, the Gehring estate, as second party, the other creditors, as third party, and the three voting trustees, as fourth party, sometimes referred to herein as the creditors' agreement of April 1, 1933. That contract did not "expressly" deal "with the payment of dividends", which is a statutory prerequisite before any credit may be allowed under section 26 (c) (1). Petitioners contend, however, that the creditors' agreement was only half of the contract and that the other half consisted of the agreement among the three voting trustees. This latter agreement was in the form of a letter dated May 12, 1933, from two of the trustees, Ahrens and Adams, addressed to the other trustee, Gehring, and accepted by him. The body of the letter or agreement is as follows:

As an inducement to your acceptance and execution of a Voting Trust Agreement of stockholders of the Ahrens Publishing Company, dated April 1, 1933, and in consideration thereof, the undersigned, being your co-voting trustees, do hereby consent and agree that as Directors and Voting Trustees of the company they will not declare, or cause to be declared, or permit to be declared, any dividend upon any of the outstanding stock of the Ahrens Publishing Company, or any of its subsidiaries, except with the unanimous consent of the undersigned and yourself, as Voting Trustees and Directors.

If this is agreeable to you, will you please so signify by signing an acceptance

Petitioners contend that these two agreements (the creditors' agreement and the agreement between the voting trustees) are not separate contracts, but that they are interdependent and together they become a single contract. At the hearing trustee Gehring testified that the original draft of the creditors' agreement contained a clause prohibiting dividends, but that trustee Ahrens felt that with such a clause he would not be able to secure the consent of the remaining stockholders of the Ahrens Publishing Co. to the voting trust agreement of April 1, 1933, so they compromised their differences by eliminating the clause prohibiting dividends from the creditors' agreement and entering into the trustees' agreement of May 12, 1933.

We do not agree with petitioners that the two agreements are interdependent and together form a single contract. The trustees' agreement of May 12, 1933, was no more than a declaration of policy by the voting trustees not to declare any dividends, except with the unanimous consent of all three trustees. The three trustees retained the power within themselves to either declare or not declare dividends. If at any time the trustees had unanimously agreed to declare a dividend, no other party to the creditors' agreement could have legally objected. This is independency, not interdependency. During the time that the voting trustees' agreement of April 1, 1933, was in effect the affairs of all three petitioners were to be directed and managed by the three voting trustees. Even without the agreement of May 12, 1933, the three trustees would have had to agree to declare dividends before any dividend could have been declared. Even with the agreement of May 12, 1933, they could have declared a dividend "without violating a provision of a written contract executed by the corporation prior to May 1, 1936." The only effect of the May 12, 1933, agreement was that, as far as the dividend policy of the three corporations was concerned, it would take a unanimous vote of the trustees instead of a majority vote to declare a dividend. That is not a contract executed by the corporations restricting the payment of dividends. The agreement was not executed by the corporations at all. We hold that petitioners are not entitled to any credit under section 26 (c) (1), *supra*. Cf. *Thibaut & Walker Co.*, 42 B. T. A. 29; *Union Telephone Co.*, 44 B. T. A. 607; *Kolor-Thru Corporation*, 44 B. T. A. 1303; *Atlas Supply Co.* v. *Commissioner*, 123 Fed. (2d) 356; *Caroline Mills* v. *Commissioner*, 126 Fed. (2d) 857; and *Metal Specialty Co.* v. *Commissioner*, 128 Fed. (2d) 259.

Petitioners' first and second alternatives are contentions for credits under section 26 (c) (2). Both these contentions are grounded upon the provisions of the written contract of April 1, 1933, entered into between petitioner Ahrens Publishing Co. as party of the first part, the Gehring estate, as parties of the second part, certain creditors, as parties of the third part, and the three voting trustees as parties of

the fourth part. Among other things that contract provided that "After the close of each calendar year, the net profits of the Publisher will be determined within thirty (30) days" and 60 percent thereof paid over first to the parties of the third part until paid in full and then to the parties of the second part. Since this was not required to be done until "After the close of each calendar year" there was no contractual requirement on the part of any of the petitioners that any portion of the earnings and profits of the taxable year of any of the petitioners was "to be paid within the taxable year in discharge of a debt, or to be irrevocably set aside within the taxable year for the discharge of a debt."

It is true that petitioners anticipated some of the payments which they were required to make under the creditors' agreement and paid them in the taxable year when such profits were earned rather than to wait until the following year to calculate such profits and make the required payments, but that was voluntary on their part and was not required by the contract. As pointed out by the Supreme Court in its recent decision in *Helvering* v. *Ohio Leather Co.*, 317 U. S. 102, such voluntary payments are not sufficient to give a credit under section 26 (c) (2).

Petitioners, in their brief, strongly rely upon *Strong Manufacturing Co.*, 41 B. T. A. 1273; affd., 124 Fed. (2d) 360, certiorari granted April 16, 1942, by the Supreme Court. Since the filing of petitioners' brief the Supreme Court has reversed *Strong Manufacturing Co.*, *supra*, and has held against the contentions here made by petitioners. *Helvering* v. *Ohio Leather Co.*, *supra*. On this issue we sustain respondent.

Turning now to the second question, it is petitioner's (Ahrens Publishing Co.) contention that the net effect of the transaction whereby the petitioner's remaining liability to the Bohn estate for Hotel World Publishing Co. stock purchased from the estate in 1928 was settled in 1937 for $6,200 less than the balance due thereon, was that the basis to petitioner for the stock so purchased was $6,200 less than the amount originally agreed to be paid, and that the question is controlled by *Hirsch* v. *Commissioner*, 115 Fed. (2d) 656, and *Helvering* v. *Killian Co.*, 128 Fed. (2d) 433. The respondent contends that, because of the fact that petitioner was solvent when the 1937 settlement occurred, the instant proceeding comes within the general rule that if the indebtedness of a solvent taxpayer is canceled or forgiven in whole or in part, the taxpayer realizes income in the amount of the indebtedness canceled. In support of this contention the respondent relies upon *United States* v. *Kirby Lumber Co.*, 284 U. S. 1; *Helvering* v. *American Chicle Co.*, 291 U. S. 426; and *Commissioner* v. *Coastwise Transp. Corporation*, 71 Fed. (2d) 104; certiorari denied, 293 U. S. 595.

The taxpayers in the two cases relied upon by petitioner had purchased certain real estate in a prior year by paying part of the consideration in cash and by either giving or assuming a mortgage for the balance. In both cases the value of the particular real estate involved had depreciated until in the taxable year the fair market value thereof was less than the respective mortgage indebtedness. In both cases the taxpayer offered to convey the real estate to the mortgagee in full satisfaction of the debt, and in both cases the mortgagee refused but agreed to take a lesser sum in satisfaction of the debt. In both cases it was held that such reduction of the mortgage indebtedness did not constitute taxable income to the particular taxpayer there involved. The Eighth Circuit, in the *Killian Co.* case, compared and distinguished the three above cited cases relied upon by the respondent in the instant proceeding.

The respondent has attempted to distinguish the instant proceeding from the two cases relied upon by petitioner upon the ground that petitioner here had not yet disposed of the stock of the Hotel World Publishing Co. in 1937. We fail to see in what respect this is material. In neither of the cases relied upon by petitioner had the respective taxpayer disposed of the respective real estate in the taxable years there involved. Petitioner in the instant proceeding has shown that the value of the stock purchased in 1928 at the top of the market had continuously depreciated from the date it was purchased down to the taxable year 1937 and that because of this fact petitioner was able to persuade the Bohn estate to readjust the purchase price of the stock downward and to take in full settlement of the promissory note representing the unpaid balance of the purchase price $6,200 less than the balance due on the note. We think this makes the instant proceeding undistinguishable in principle from the two cases relied upon by petitioner. In line with those two cases, we hold that the net result of the settlement in 1937 was in substance a reduction of the purchase price of the Hotel World Publishing Co. stock from $40,000 to $33,800, and thereafter Ahrens' cost basis of the stock was $33,800 instead of $40,000, and that the respondent erred in determining that Ahrens realized additional income in the amount of $6,200 for the taxable year 1937.

*Decisions will be entered under Rule 50.*