Mark W. Allen and Company v. Commissioner.
Mark W. Allen & Co. v. Commissioner
Docket No. 111343.
United States Tax Court
1943 Tax Ct. Memo LEXIS 367; 1 T.C.M. (CCH) 887; T.C.M. (RIA) 43168; April 9, 1943
*367 1. Petitioner was engaged in the manufacture of hair and shaving preparations and was the owner of certain trade-marks registered in the United States Patent Office, which it used in its business. In the protection of the ownership of these trade-marks it became necessary to institute certain proceedings against other business concerns for infringement of these trade-marks, which actions resulted favorably to petitioner. In these infringement proceedings petitioner incurred certain attorney's fees and other expenses. Held, these expenditures were capital expenditures to be added to the cost of petitioner's trade-marks and were not deductible as ordinary and necessary business expenses. 2. In 1930 petitioner purchased a certain parcel of land in the City of Detroit, Michigan, under a land contract signed by petitioner and the sellers of the land. Petitioner paid a certain part of the purchase price in cash and agreed in the land contract to pay the balance in monthly installments. Following the purchase, land values greatly declined in the City of Detroit. In October 1939, petitioner owed a balance of $16,371.26 on the land contract. By agreement with the owners of the contract, petitioner *368 paid them $10,750 in full settlement of the balance due and received from them a deed to the property. Petitioner was solvent at the time the agreed settlement was made. The land had no greater value than the $10,750 which was paid in settlement of the contract. Held, the transaction was in effect an adjustment in the price of the land due to the great decline in real estate values and did not result in taxable income to petitioner. Held, further, section 22 (b) (9), Revenue Act of 1939 is not applicable to the transaction. Morse D. Campbell, Esq., 2324 Union Guardian Bldg., Detroit, Mich., for the petitioner. John H. Pigg, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion BLACK, Judge: The Commissioner has determined deficiencies in petitioner's income tax for the years 1939 and 1940 of $886.22 and $48.26, respectively; also a deficiency in petitioner's excess-profits tax for the year 1939 of $395.29. The deficiencies for 1939 are due to four adjustments made by the Commissioner in the income tax return filed by petitioner for the taxable year. These adjustments were as follows: Unallowable Deductions and
Additional Income: (a) Legal fees
$ 135.00
(b) Litigation expense
497.86
(c) Interest expense
471.32
(d) Income from discharge of
indebtedness
5,621.26
*369 The deficiency for 1940 is due to two adjustments which the Commissioner made in the income tax return of petitioner for that year. These two adjustments were: [SEE TABLE IN ORIGINAL]
The petitioner does not contest the correctness of adjustments (a) and (c) made by the Commissioner for 1939 and does not contest the correctness of adjustment (a) made by the Commissioner for 1940. Adjustment (b), for the year 1939, was explained by the Commissioner in his deficiency notice as follows: (b) The amount of $497.86 expended in connection with litigation to establish your right to the trade-mark "Vita" is held to constitute a capital expenditure. Therefore, this amount has been disallowed as a deduction. Sec. 19.2402 Regulations 103. Adjustment (b), for the year 1940, was explained in the deficiency notice in the same manner as above. Adjustment (d), for the year 1939, was explained by the Commissioner in his deficiency notice as follows: (d) In 1930 you bought a parcel of real estate adjoining your premises at 2109 Second Avenue for use as a warehouse. The purchase was made on land contract at a cost of $30,750.00. By September 13, 1939, the contract was paid down to a balance of $16,371.26. *370 Shortly after that date the vendor accepted $10,750.00 in cash in full discharge of your contract obligation. You applied the saving of $5,621.26 as a reduction of the cost of the land acquired in the purchase. It is held that you realized taxable income by the payment or purchase of your obligation at less than face value. Therefore, the amount of $5,621.26, the saving realized, has been added to your income. Section 22 (a) Internal Revenue Code. Petitioner by appropriate assignments of error has challenged the correctness of the Commissioner's adjustments (b) and (d) for the year 1939 and adjustment (b) for the year 1940. The petitioner is a corporation with its principal office in Detroit, Michigan. Its income tax returns for the two taxable years were filed with the Collector for the District of Michigan at Detroit, Michigan. There are two issues involved in this proceeding and we shall take up these issues in their order and make findings of fact as to them separately and decide them separately. Expenses of Litigation in Protection of Trade-Marks [The Facts] Petitioner is the registered holder of the trade-mark "Vita," registered in the United States Patent Office, *371 used in connection with the sale of hair preparations. Petitioner was notified on or about September 17, 1939, of the pending application in the United States Patent Office by E. Fredericks, Inc. for the trade-mark "Vita-Chrome" to be used in connection with the sale of a hair preparation. Petitioner authorized its attorney to oppose the application for the registration of the published trade-mark "Vita Chrome" as an infringement on the registered trademark "Vita." Petitioner, through its attorney, filed in the United States Patent Office its opposition to the registration of the trade-mark "Vita Chrome" by E. Fredericks, Inc. and also cancellation proceedings against the registered trade-mark "Vita Tonic" and "Vita Lustre" held by E. Fredericks, Inc. During the period September 21, 1937, to May 1, 1940, the foregoing litigation before the United States Patent Office was prosecuted by the petitioner and his attorney. The litigation was terminated during the period January 1, 1940, to May 1, 1940, by agreement between the petitioner and E. Fredericks, Inc.
Under the terms of the agreement E. Fredericks, Inc. abandoned the commercial use of the name "Vita Chrome" and "Vita Lustre," *372 consented to the denial of its application for registration of the former and consented to the cancellation of the registration of the latter in the United States Patent Office. Under the terms of the agreement the petitioner agreed that E. Fredericks, Inc. could use the name "vita Tonic" for limited purposes. The purpose of the foregoing litigation was to prevent the use by E. Fredericks, Inc. of the names "Vita Chrome," "Vita Lustre" and "Vita Tonic" in connection with the sale of hair preparations. The sum of $497.86 was expended by petitioner in 1939 in carrying on this litigation. These expenses were incurred for legal fees and expenses of counsel and for shorthand reporter services. Petitioner expended $100 in 1940 for legal fees in connection with this same litigation which was settled in that year. Petitioner is the registered holder of the trade-mark "Prep," "Good Morning" and "Sunrise Representation" registered in the United States Patent Office and used in connection with hair preparations, shave soap and shave talc. In the latter part of 1939 petitioner discovered that Armour and Co. of Chicago, Illinois, were offering for sale and selling products carrying the words *373 "Morning Pep" and an illustration representing a rising sun, such products including products similar to those sold by petitioner under the trade-mark "Prep," "Good Morning" and "Sunrise Representation." Petitioner authorized its attorney to take up with Armour and Co. the matter of its alleged infringement on petitioner's trade-marks. There was considerable correspondence on the subject between petitioner's attorney and Armour and Co. The alleged infringements were terminated on or about April 8, 1940, upon agreement by Armour and Co. to discontinue the use of the words "Morning Pep," the word "Pep" and the representation of the rising sun with the crowing cock, reserving, however, the right to dispose of definite amounts of the offending products then manufactured and on hand. Petitioner paid its attorney legal fees of $50 for procuring this settlement with Armour and Co. [Opinion] Petitioner claimed deductions for the foregoing amounts expended in defending and perfecting title to its trade-marks as ordinary and necessary business expenses. The Commissioner has disallowed such expenditures as deductions from income and has determined that they were capital expenditures. *374 He relies upon section 19.24-2 Regulations 103 to support his action. The Regulations in question relate to capital expenditures. The Regulations contain, among other things, the following language: "The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a deductible expense". Among other authorities cited by respondent in support of his determination are Morgan Jones Estate, 43 B.T.A. 691, affirmed 127 Fed. (2d) 231. This case involved expenses of suit to remove cloud on title to land on which defendant claimed a mineral right lease given by taxpayer's predecessor in title. Central Material & Supply Co., 44 B.T.A. 282, affirmed on this point 126 Fed. (2d) 542. This case involved expenses of litigation in defense of title to land in respect of which taxpayer had acquired the rights of the lessor under certain oil and gas royalty contracts. We think the Commissioner must be sustained as to these particular adjustments under the Regulations relied upon and the decisions above cited. Settlement of Land Contract *375 for Less Than Face Value [The Facts] On May 13, 1930, petitioner purchased a certain lot of parcel of land situated in the City of Detroit, Michigan, together with the improvements thereon. The purchase of the land by petitioner was made from Augustin W. Cooney and Mary Cooney, his wife, upon a land contract dated May 13, 1930, which land contract was signed and executed by Augustin W. Cooney and Mary Cooney and by petitioner. The petitioner after execution of the land contract entered upon its books of account a debit to its fixed assets in the amount of $30,750 and a credit to its liabilities of $30,750. The terms of the contract provided for a purchase price of $30,750, payable $3,000 down prior to the delivery of the land contract and the balance payable at the rate of $270 per month, beginning June 13, 1930, and monthly thereafter, such payments to be applied first upon interest at the rate of six per cent per annum upon the unpaid principal balance, and the balance of said monthly payment to be applied upon the unpaid principal balance. The petitioner made payments on the contract which, together with the payments made September 12, 1939, reduced the unpaid principal *376 balance due to $16,371.26. Under the date of October 12, 1939, petitioner paid the vendors under the contract the sum of $10,750 as payment in full for said land and improvements described in the land contract. The fair market value of said land and improvements was not in excess of $10,750 at the time such payment was made. Under date of October 12, 1939, the petitioner received from the vendors under the contract a warranty deed executed by said vendors conveying to the petitioner the title to the land and improvements described in the land contract. The final payment of $10,750 on the contract left $5,621.26 as a credit balance in the "Land Contract Payable" account on petitioner's books of account. On the books of account of the petitioner by journal entry dated December 31, 1939, the credit balance of $5,621.26 was transferred from the "Land Contract Payable" account to the fixed asset account, said "Land Contract Payable" account being debited with the amount of $5,621.26, and said fixed asset account being credited with the amount of $5,621.26. Petitioner was solvent both before and after the payment of the $10,750 on October 12, 1939, in satisfaction of the remaining unpaid *377 principal balance on the land contract amounting to $16,371.26 as aforesaid. [Opinion] Petitioner contends that the settlement which it made with the owners of the land contract for $5,621.26 less than the amount which was still due under the terms of the contract was because the land which petitioner had purchased under the contract had greatly depreciated in value and was worth no more than petitioner paid in final settlement of the contract. The facts support petitioner in this contention. A real estate broker in Detroit who seemed well qualified to testify as to land values in the City of Detroit testified at the hearing that the land in question was worth no more than $8,400 at the time petitioner settled the balance which it was owing under the contract for $10,750. Respondent offered no testimony on this point. Thus we see that petitioner paid the full value and more for the land when it made the final payment in settlement of the contract. Under these circumstances, the petitioner contends that it was not in receipt of income from the transaction but that there was merely an adjustment in the purchase price of the property from that which had been originally agreed *378 upon, due to the great decline in real estate values in the City of Detroit between the dates of the original purchase and the date of the consummation of the settlement agreement. Petitioner cites in support of its contention such cases as Hirsch v. Commissioner, 115 Fed. (2d) 656; Helvering v. A. L. Killian Co., 128 Fed. (2d) 433 and Gehring Publishing Co., 1 T.C. 345. These cases undoubtedly support petitioner's contention. See also Helvering v. American Dental Co., 318 U.S. 322. In the latter case the Supreme Court said, among other things: * * * Where the indebtedness has represented the purchase price of property, a partial forgiveness has been treated as a readjustment of the contract rather than a gain. * * * [Citing the three cases above mentioned.] Therefore, it would seem clear that petitioner's assignment of error contesting the correctness of the Commissioner's adjustment (d) should be sustained on the strength of the above cited cases. Respondent, however, argues in his brief that section 22 (b) (9) of the Revenue Act of 1939 is applicable *379 and that because petitioner has not shown that when it filed its income tax return for 1939, it also filed its consent to the Regulations prescribed under section 113 (b) (3) then in effect, it is taxable on the $5,621.26 in question. Section 22 (b) (9) is printed in the margin. [1] The Commissioner in his deficiency notice made no determination that section 22 (b) (9), Revenue Act of 1939 was applicable. He relied altogether on section 22 (a). Nor did the Commissioner, at the hearing, make any contention that section 22 (b) (9) was applicable. He urges it for the first time in his brief. Notwithstanding this lateness on the Commissioner's part in raising the question of the applicability of section 22 (b) (9), we have carefully considered it and have reached the conclusion that it has no application to a situation such as we have here. The statute in question applies to the reduction of indebtedness evidenced by securities which have been issued by a corporation. In the instant case the contract which was settled by petitioner for less than its face value was not one which had been issued by petitioner but was a land contract which had been executed jointly by petitioner *380 and the owners of the land. *381 The settlement which was reached between the parties in 1939 seems clearly to have been a mere readjustment of the price of the property in view of the heavy decline in real estate values which had taken place and did not result in income to petitioner under the authorities above cited. Petitioner treated the transaction on its books as a readjustment of the cost of the property to it. This is clearly shown by the facts which have been stipulated. In the future, when petitioner sells this property, instead of having a cost basis of $30,750 (the price which it originally agreed to pay under the land contract), it will have a cost basis of that amount reduced by the $5,621.26 which represents the excess of the remaining unpaid principal balance of the purchase price over the amount paid in discharge thereof. See Gehring Publishing Co., supra.On this issue we sustain petitioner. Decision will be entered under Rule 50. Footnotes
1. SEC. 22. GROSS INCOME. * * * * *
(b) Exclusions from Gross Income. - The following items shall not be included in gross income and shall be exempt from taxation under this chapter: * * * * *
(9) Income from Discharge of Indebtedness. - In the case of a corporation, the amount of any income of the taxpayer attributable to the discharge, within the taxable year, of any indebtedness of the taxpayer or for which the taxpayer is liable evidenced by a security (as hereinafter in this paragraph defined) if the taxpayer makes and files at the time of filing the return, in such manner as the Commissioner, with the approval of the Secretary, by regulations prescribes, its consent to the regulations prescribed under section 113(b)(3) then in effect. In such case the amount of any income of the taxpayer attributable to any unamortized premium (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be included in gross income and the amount of the deduction attributable to any unamortized discount (computed as of the first day of the taxable year in which such discharge occurred) with respect to such indebtedness shall not be allowed as a deduction. As used in this paragraph the term "security" means any bond, debenture, note, or certificate, or other evidence of indebtedness, issued by any corporation. This paragraph shall not apply to any discharge occurring before the date of enactment of the Revenue Act of 1939, or in a taxable year beginning after December 31, 1945.↩