SHERATON PLAZA COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 89380.   Filed January 18, 1963.

*Robert J. Richards, Jr., Esq.,* for the petitioner.

*Albert R. Doyle, Esq.,* and *John C. Galluzzo, Jr., Esq.,* for the respondent.

700

OPINION.

Opper, *Judge:* In dealing with the vexed problem of the receipt of income from cancellation of indebtedness, it is important to consider not only the circumstances under which the debt was forgiven, *United States* v. *Kirby Lumber Co.*, 284 U.S. 1 (1931); *Helvering* v. *Amer. Chicle Co.*, 291 U.S. 426 (1934); *Helvering* v. *Amer. Dental Co.*, 318 U.S. 322 (1943); *Commissioner* v. *Jacobson*, 336 U.S. 28 (1949), but also what gave rise to the debt in the first place, so that the entire transaction can be viewed as a whole. See, e.g., *Bowers*

v. *Kerbaugh-Empire Co.*, 271 U.S. 170 (1926); *Hirsch* v. *Commissioner*, 115 F. 2d 656 (C.A. 7, 1940), reversing 41 B.T.A. 890 (1940); *A. L. Killian Co.*, 44 B.T.A. 169 (1941), affd. 128 F. 2d 433 (C.A. 8, 1942); *Gehring Publishing Co.*, 1 T.C. 345 (1942); *Astoria Marine Construction Co.*, 12 T.C. 798 (1949). This case, for example, is not similar to one in which bonds issued for cash at par to third parties are ultimately discharged for a smaller amount, thus benefiting the debtor economically in a pecuniary sense, to the extent of the difference between the cash received or the par value of the bonds assumed and that used to liquidate the debt. See, e.g., *United States* v. *Kirby Lumber Co.*, supra.

Here, petitioner's sole stockholder purchased property and organized petitioner to receive it.[1] Apparently as an afterthought, and with no additional consideration, petitioner assumed the obligation to pay its parent an indebtedness due from a stranger for rent which had become due before it was born.[2] It is not as though petitioner had agreed with the previous tenant to assume the obligation; cf. *Helvering* v. *Amer. Chicle Co.*, supra, or as though petitioner itself had received any benefit from the deductions which gave rise to it. What advantage petitioner or its parent anticipated from this unexplained assumption is entirely mysterious but probably irrelevant. It is this same assumed indebtedness created in connection with the acquisition of petitioner's property that was ultimately canceled and which gives rise to the present claim by respondent that petitioner is thereby in receipt of taxable income.

Petitioner's parent could not, of course, write off the debt, since it had never been taken up in its income. And it seems clear, in spite of respondent's insistence to the contrary, that this is not an instance of tax benefit, see, e.g., sec. 22(b) (12), I.R.C. 1939, where the creation of the original debt secured for petitioner the benefit of a current deduction while at the same time eliminating the receipt of income by the parent. But see *Commissioner* v. *Auto Strop Safety Razor Co.*, 74 F. 2d 226 (C.A. 2, 1934), affirming 28 B.T.A. 621 (1933). All such problems were solved in the tax settlement covering the years during which petitioner had been in existence.

The debt in question may have created a benefit for the previous tenant of the property by conferring upon it a deduction for the ac-

---

[1] From the balance sheet of the old operating company included in our findings, it appears that the trust acquired stock or assets worth some $178,000 and subject to liabilities of only about $73,000 exclusive of the debt owed to the trust itself—in other words, a net of over $100,000—for less than $30,000. While in form this was a purchase of stock, but see *Estate of James F. Suter*, 29 T.C. 244 (1957), the book value of the company's assets is some evidence of the value of the stock. *B. F. Edwards*, 39 B.T.A. 735, 737 (1939); *Lillian G. McEwan*, 26 B.T.A. 726 (1932).

[2] Respondent concurs in this view of the facts: "Thus, at the time of the debt cancellation the petitioner was obligated to the Trust in a total amount of $72,256.36, all of which amount related back to the prereorganization rent obligations of the Operating Company to the Trust."

crual of rent which, in fact, was never paid. We need not pause to consider whether the accruals under such circumstances were proper. See *Zimmerman Steel Co.*, 45 B.T.A. 1041 (1941), revd. 130 F. 2d 1011 (C.A. 8, 1942). The significant factor is that at that time there was no more than an arm's-length relationship between the tenant and petitioner's parent, the landlord, which actually received none of the accrued rent; and we can safely assume, for a similar reason, and since no effort was made to collect the arrearages, that the original debtor was insolvent.[3] See *Astoria Marine Construction Co., supra.*

Petitioner suggests that, since the debt was assumed in a transaction in which property was acquired, it partook from its inception of the nature of a capital item as to it. We view the facts as supporting this position. Even had petitioner paid the defaulted rent in lieu of having it forgiven, it could not have taken a deduction therefor. *Magruder* v. *Supplee*, 316 U.S. 394 (1942). Petitioner received the personal property to be used in operating its business by issuing its stock[4] and assuming certain debts originally represented by chattel mortgages on the personal property. These were released by the parent without eliminating the indebtedness but the record indicates that they were the limit of any value attributable to the chattels. The amount here in question is beyond any such figure.

That the portion of the arrangement between petitioner and its parent may have been one in which no gain or loss was recognized is likewise irrelevant.[5] It seems clear that the transfer of the property from the original tenant was a genuine sale, as in *Hirsch* v. *Commissioner, supra*, for example, subject to the mortgage, which was evidently the full extent of the value of the property.

The debt may have been canceled without donative intent on the part of the parent, see *Helvering* v. *Amer. Dental Co., supra*, but that

[3] A different interpretation of the facts is possible and we intimate no opinion as to which is correct. If the trust by acquiring property from its debtor at a drastically reduced price (footnote 1, *supra*) in effect collected the unpaid rent due it and if, representing as it did an income item of unpaid rent, the trust then received income of well over $70,000 in 1941, that would still not affect the disposition of our present question. "When the indebtedness was canceled, whether or not it was a contribution to the capital of the debtor depends upon considerations entirely foreign to the question of the payment of income taxes in some previous year." *Commissioner* v. *Auto Strop Safety Razor Co.*, 74 F. 2d 226, 227.

[4] Regs. 118.

Sec. 39.22(a)–15. *Acquisition or disposition by a corporation of its own capital stock.* * * * The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

See also sec. 118, I.R.C. 1954, and S. Rept. No 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess., pp. 18, 190.

[5] Respondent says, for example: "Since the rent debts were never paid but were claimed as federal income tax deductions, they conferred both tax and economic benefits on the petition and its predecessor, which benefits are attributable to the petitioner whether or not the debts were carried over as part of a 'reorganization'."

is of no significance in dealing with a contribution to capital by a sole shareholder. *Robert H. Scanlon*, 42 B.T.A. 997 (1940).

Had petitioner's parent forgiven the preexisting rental indebtedness of petitioner's insolvent predecessor, which bore every indication of being too high to be tolerable, the situation would have been comparable to that envisaged in both *Astoria Marine Construction Co.*, *supra*, and *Hirsch* v. *Commissioner*, *supra*, since the property covered by the chattel mortgages, the debtor's only apparent asset, was turned over to the creditor. And this would seem to us to be true notwithstanding that the debtor had currently deducted the rent. *Highland Farms Corporation*, 42 B.T.A. 1314 (1940). Instead, the parent caused petitioner to assume the indebtedness when acquiring the property and later forgave it.

It is hence of little moment whether we view the operation as a readjustment of purchase price, *Hirsch* v. *Commissioner*, *supra;* as one in which the original debtor was insolvent, see *Astoria Marine Construction Co.*, *supra;* as a transaction in which the entire result was an absence of profit to petitioner, *Bowers* v. *Kerbaugh-Empire Co.*, *supra;* or as a capital contribution to petitioner by its parent by means of a gratuitous cancellation of the debt.[6] Even if the petitioner had benefited from the deductions, that would not have prevented the parent's act from being "gratuitous." *Commissioner* v. *Auto Strop Safety Razor Co.*, *supra.*

Had the obviously worthless old indebtedness never been taken into consideration by petitioner, or had it instead issued additional common stock to its parent, the matter would be free from doubt. It seems to us that the parties have put themselves virtually in this position without in any way adversely affecting the revenue. We regard the deficiency determination in this respect as unwarranted

*Decision will be entered for the petitioner.*

---

[6] "In general, if a shareholder in a corporation which is indebted to him gratuitously forgives the debt, the transaction amounts to a contribution to the capital of the corporation to the extent of the principal of the debt." Sec. 39.22(a)–13, Regs. 118.